# 95 DTA 150

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE ARECIBO Y UTUADO
## PANEL SUSTITUTO DE BAYAMON

MANUEL A. ORTIZ TEJADA Y OTROS
Apelantes

v.

NORMAN E. LEWIS DENOE Y OTROS
Apelados

Núm. KLAN-95--00333

San Juan, Puerto Rico, a 23 de mayo de 1995

Panel integrado por su presidente, Arbona Lago
y los jueces Giménez Muñoz y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Manuel A. Ortiz Tejada y otros apelan de la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (Juez Benigno Dapena Yordán) del 21 de febrero de 1995, mediante la cual se desestimó la reclamación en contra del Estado Libre Asociado en una acción por embargo ilegal.

La parte apelante arguye que erró el Tribunal en su sentencia parcial al determinar que el alguacil que realizó el embargo seguía órdenes del Tribunal y no era responsable de los actos que ejecutó en virtud de esa orden.

Hemos examinado la apelación a la cual se le unió un extenso apéndice. De acuerdo a la Regla 16 del Reglamento del Tribunal de Circuito de Apelaciones del 3 de febrero de 1995, dentro de los treinta (30) días siguientes a la presentación del recurso la parte apelada deberá someter su escrito. El apelante deberá perfeccionar el recurso sometiendo la exposición narrativa de la prueba o la transcripción de la evidencia. En el caso de epígrafe, dichos trámites no han sido concluidos. Debido al resultado que hemos llegado, no hace falta la Exposición Narrativa de la Prueba. Tomamos como cierta la relación de hechos del apelante y estando en condiciones de resolver así lo hacemos. Examinados los planteamientos del apelante, los documentos en apéndice y el derecho aplicable, procede que se confirme la sentencia apelada.

El señor Norman E. Lewis Denoe instó demanda en cobro de dinero contra el señor Luis Ortiz y esposa en el año 1991, para asegurar la sentencia que pudiera recaer en su día el Tribunal de Instancia ordenó el embargo preventivo de la propiedad comercial que éste tenía. (Caso DCD-91-1643 del Tribunal de Primera Instancia, Sala Superior de Bayamón). En el Señalamiento de Bienes se pide embargar *"tanques, botelleros, cajas registradoras, neveras o cualquier otra mercancía de colmado y frigorífico que se encuentre en la Calle Comerío Núm. 280 y/o 284 en Bayamón".*

El alguacil, Ezequiel Romero acudió con el Mandamiento de Embargo, el Señalamiento de Bienes y la Orden expedida por el juez al local ubicado en el Núm. 280 de la Calle Comerío de Bayamón donde estaba el *"Super-colmado Ortiz".* El señor Manuel Ortiz Tejera (el apelante), le informó a preguntas del alguacil que ese local no pertenecía a Luis Ortiz, procediendo a mostrarle los documentos de la compraventa que había hecho del local al señor Luis Ortiz en el año 1986. Además, se personó al lugar el abogado del apelante quien habló

con el alguacil y le mostró facturas, patentes municipales y otros documentos como prueba de que el local no pertenecía a la persona contra la cual se había dictado la orden de embargo.

El Alguacil Romero hizo caso omiso a las alegaciones de Ortiz Tejera de que era el dueño del negocio y procedió a realizar el embargo. El embargo comenzó el 17 de junio de 1991 a la 1:00 p.m. y finalizó el 20 de junio de 1991, procediendo el alguacil a realizar un inventario de los bienes embargados y el depositario se hizo cargo de los mismos.

Manuel Ortiz Tejera tuvo que cerrar su local al no tener mercancía que vender. Su colmado estuvo cerrado por tres (3) meses. Este reabrió cuando le devolvieron los bienes que no se habían dañado con el embargo. Ante estos hechos el apelante instó acción civil sobre daños y perjuicios contra Norman Lewis Denoe, la Administración de Tribunales y el Estado Libre Asociado de Puerto Rico.

El 21 de febrero de 1995 se dictó sentencia parcial en la que se desestima la acción contra el Estado Libre Asociado al estimar que el alguacil se había limitado a cumplir con la orden del Tribunal, también se desestimó la acción contra la Administración de Tribunales por carecer ésta de personalidad jurídica.

La Regla 56 de Procedimiento Civil, 32 L.P.R.A., Ap. III autoriza al tribunal a tomar medidas adecuadas para asegurar el cumplimiento de la sentencia que se dicta. Entre estas medidas se encuentra el embargo, la cual está predicada en la preservación de la capacidad económica del deudor permitiendo al acreedor vindicar su derecho. *Fresh-O-Bakery Co. v. Molinos de Puerto Rico,* 103 D.P.R. 509 (1975).

Es el alguacil el funcionario judicial con facultad para realizar todas las diligencias de los actos judiciales del Tribunal, entre las que se encuentra el realizar embargos. 4 L.P.R.A. sec. 367; 4 L.P.R.A. sec. 399; *Baudilila Rodríguez v. El Registrador de la Propiedad,* 42 D.P.R. 104 (1931).

Como funcionario del tribunal está obligado a cumplir estrictamente con las órdenes que se emiten, *"independientemente de cualquier defecto en las actuaciones que originaron aquéllas".* 4 L.P.R.A. sec. 404. *Fernández v. Marshall del Distrito de San Juan,* 20 D.P.R. 65 (1914).

En cuanto a la responsabilidad de alguaciles al ejecutar las órdenes del tribunal, el Tribunal Supremo resolvió que un alguacil que actúa de acuerdo con la orden expedida por una corte con jurisdicción, no tiene responsabilidad por razón de los actos que ejecute en cumplimiento de esa orden. *Fernández v. El Marshal de Distrito de San Juan, supra; Sucesores de L. Villamil & Co. v. Solá,* 22 D.P.R. 531 (1915); *Mercado Riera v. Registrador,* 95 D.P.R. 86 (1967).

El apelante no hace ninguna alegación que nos convenza de que el alguacil se apartara de la orden de ejecución expedida o cometiera ilegalidad al darle cumplimiento, al contrario el alguacil Romero procedió a cumplir con la orden emitida. De su faz dicha orden no tenía visos de ilegalidad, la misma fue ordenada por voz del Juez Juan Ortiz Torrales y emitido el Mandamiento de Embargo de Bienes por el Secretario. Ante estos documentos el alguacil procedió a dar fiel cumplimiento a la orden.

Las únicas gestiones efectuadas por el apelante para evitar que se llevara a cabo el embargo fue presentar varios documentos al alguacil indicativos de que él era el verdadero dueño del establecimiento. Los alguaciles no tienen facultad de examinar y apreciar la prueba que le den las partes, ni de adoptar medidas con el resultado de dicha apreciación. *"Por regla general los poderes y deberes de dicho funcionario son de naturaleza ministerial".* Sánchez v.

*Zequeira*, 23 D.P.R. 50, 57 (1915).

Al alguacil no le incumbía investigar, ni poner reparos al cumplimiento de una orden judicial. Tanto es así, que la Regla 14 de Conducta y Eficiencia que rigen a los alguaciles dispone:

*"El alguacil no debe ejecutar ordenes que no sean las de sus superiores ni tampoco atender indicaciones de persona alguna que no esté vinculada a la administración de la justicia de Puerto Rico".* 4 L.P.R.A. Ap. VI.

De relevancia a la controversia jurídica que plantea el recurso es que la gestión del apelante para evitar el embargo se limitó a llevar ante el alguacil documentos, facturas y el testimonio de varias personas --entre ellas un abogado-- sin instar en ningún momento algún tipo de acción judicial para paralizar el embargo. El embargo se extendió por cuatro días y en ningún momento el apelante hizo gestión alguna para hacer llegar sus reclamos a la persona con potestad para entender en el asunto, el juez. No es el alguacil la persona responsable de abogar por los reclamos de las partes.

El apelante no solicitó levantamiento de embargo u otra medida del Tribunal, no fue hasta el 24 de junio de 1991 que solicitó entrar como interventor del caso de epígrafe.

El funcionario que actúe conforme a una orden expedida que aparenta ser correcta, no tiene responsabilidad por los actos que cometa al cumplir dicha orden. *Fernández v. Marshal del Distrito de San Juan, supra.*

Por los fundamentos expuestos, se confirma la sentencia recurrida y se desestima el recurso de apelación instado.

El juez Giménez Muñoz disiente por escrito.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

## VOTO DISIDENTE DEL JUEZ DE APELACIONES SR. GIMENEZ MUÑOZ — 95 DTA 150

San Juan, Puerto Rico, a 19 de junio de 1995

Luego de sopesar los criterios correspondientes y los hechos del caso nos vemos forzados a disentir del criterio de la mayoría. Veamos.

### I

El artículo 1802 del Código Civil, establece que todo perjuicio material o moral da lugar a reparación si concurren tres requisitos o elementos; primero, la realidad del daño sufrido; segundo, que exista nexo causal entre el daño y la acción u omisión de otra persona; y tercero, que dicho acto u omisión sea culposo o negligente. *Sociedad de Gananciales v. González Padín,* 117 D.P.R. 94 (1986). La omisión es antijurídica cuando el causante del daño incumple el deber jurídico de actuar y su realización hubiere evitado el daño causado. *Sociedad de Gananciales v. González Padín, supra.* Hay culpa cuando no se obra como un hombre de diligencia normal u ordinaria, un buen padre de familia, conforme a las

circunstancias del caso. *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8 (1987).

En causas por embargo ilegal el demandante tiene que alegar y probar *"que sus bienes fueron embargados; que la acción que contra él se entabló y en la cual se decretó el embargo terminó por sentencia firme a su favor; y los daños sufridos..." Frigorífico M H. Ortiz v. Quiles,* 101 D.P.R. 676 (1973).

## II

Los hechos, según surgen del alegato y los documentos unidos, y que son pertinentes y materiales, revelan que el Sr. Norman E. Lewis y su esposa, radicaron demanda en Cobro de Dinero contra el Sr. Luis Ortiz y su esposa, Caso Número CD-91-1643 en el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Bayamón. El señor Lewis obtuvo una orden para trabar embargos contra bienes pertenecientes a Luis Ortiz habiendo luego expresado en el Señalamiento de Bienes como objetos a embargarse: *"tanques, botelleros, cajas registradoras, neveras o cualquier otra mercancía del colmado y frigorífico que se encuentre en la Calle Comerío Núm. 280 y/o 284 en Bayamón".* En síntesis, que se embargaran los negocios localizados en las direcciones mencionadas.

En virtud de la mencionada orden, un alguacil del Tribunal de Bayamón, acompañado por el depositario, el día 17 de junio de 1991, se personó al establecimiento localizado en el Núm. 280 de la Calle Comerío, donde se encontraba localizado el *"Super Colmado Ortiz"* y al preguntar por el demandado Luis Ortiz fue informado que no se encontraba. En ese momento otra persona de nombre Manuel A. Ortiz Tejeda, quien no era parte en el pleito causante del embargo, administraba el negocio -como veremos, en concepto de dueño- y le informó al alguacil que el comercio era de su propiedad y no de Luis Ortiz, ya que él lo había adquirido por compra llevada a cabo en el 1986. Procedió entonces a mostrarle al alguacil los siguientes documentos:

1. Contrato de Compraventa de Negocio del 15 de julio de 1986, suscrito ante Notario Público por Manuel A. Ortiz Tejeda y esposa como Compradores y Luis A. Ortiz y esposa como Vendedores;

2. Una serie de cheques cancelados suscritos por Manuel A Ortiz y su esposa Margarita en pago de artículos propios de su comercio;

3. Facturas dirigidas a Manuel A. Ortiz-Colmado Ortiz por concepto de artículos comestibles y otros artículos típicos del colmado;

4. La Patente Municipal a nombre de Colmado Ortiz con dirección de Calle Dr. Hiram González Núm. 280, Bayamón, Puerto Rico, expedida el 30 de junio de 1991;

5. Certificación del Gobierno Municipal de Bayamón, Departamento de Finanzas, de 10 de julio de 1991, haciendo constar que en sus registros aparece registrado el negocio conocido como Colmado Ortiz, ubicado en la Calle Dr. Hiram González Núm. 280, Bayamón, cuyo propietario es el Sr. Manuel A. Ortiz Tejeda; que el negocio cambió de dueño habiendo sido el dueño anterior Luis A. Ortiz, quien operó el negocio hasta el 15 de julio de 1986. También el Sr. Manuel A. Ortiz logró que se personara al comercio el letrado Jorge Marzán Figueroa, su abogado y notario autorizante en la compraventa del negocio, quien le informó al alguacil que el negocio no pertencía a Luis A. Ortiz y sí a Manuel Ortiz y esposa.

A pesar de todos los documentos mostrados y la conversación sostenida con el licenciado Marzán Figueroa, el alguacil manifestó que se trataba de un *"chanchullo"* y trabó el embargo en cuestión, lo que demoró cuatro días, luego de lo cual cerró el negocio. El comercio permaneció cerrado durante tres meses por no tener mercancía para operar.

El 24 de junio de 1991 los embargados solicitaron intervenir en el caso *Norman E Lewis y su esposa v. Luis Ortiz,* Caso Núm. DCD91-1643, del Tribunal de Primera Instancia, Sala Superior de Bayamón. El Tribunal, a solicitud del señor Lewis, los incluyó como co-demandados y aún así les exigió prestar fianza para intervenir. Debido a la Petición de Quiebra que radicó el señor Lewis, ese caso nunca fue resuelto en los méritos.

En vista del sorprendente, negligente y temerario proceder del señor alguacil, el señor Ortiz y esposa radicaron demanda en Daños y Perjuicios contra Norman E. Lewis y el Estado Libre Asociado de Puerto Rico. El Tribunal de Instancia, luego de ventilar la causa que fuera radicada, aunque entendió que se encontraba ante lo ilegal, decretó que el alguacil, por ser un funcionario del tribunal, no fue negligente porque estaba obligado a cumplir estrictamente con las órdenes del Tribunal al realizar el embargo. Señaló además, que el alguacil *"no tenía la facultad para determinar quién era el dueño del negocio y la validez del documento que se le mostrara".*

### III

La doctrina establecida en el artículo 1802, aplicada al caso de autos, revela que la cuestión a resolver consiste en determinar si en el curso de trabarse un embargo le es exigible al alguacil actuar como un buen padre de familia o si, por el contrario, tiene que limitarse a cumplir lo ordenado no empece los daños que pueda causar su imprudente acción.

La sección 404 de la Ley de la Judicatura, 4 L.P.R.A. 404, dispone que: *"[U]n marshal o funcionario administrativo está autorizado para cumplimentar, y deberá cumplimentar, toda diligencia y orden conforme a la práctica y dictada por autoridad competente, independiente de cualquier defecto en las actuaciones que originaron aquéllas".*

Surge de esa disposición, y, como veremos, es la única interpretación que cabe de la misma, que el alguacil debe proceder a cumplimentar órdenes o diligencias de modo prudente, razonable, mesurado y sensato. La *"práctica"* no ha sido, ni debe ser, cumplimentar órdenes de modo descuidado o negligente. De igual modo, se desprende de dicha sección que la autorización de cumplimentar órdenes y diligencias *"independiente de cualquier defecto"* no constituye carta blanca para trabar embargo de modo imprudente y descuidado. Lo que sí quiere decir es que, aún la orden que pueda contener un error o defecto, debe ser cumplimentada de modo prudente, razonable, mesurado y sensato por el alguacil. El uso de la frase *"indepediente de cualquier defecto en las actuaciones que originaron aquéllas"* se refiere a la orden que contenga o pueda contener un error o defecto y no a la actuación defectuosa o imprudente del embargante.

### IV

Repasemos brevemente la doctrina prevaleciente en la jurisdicción americana. Esta nos lleva a concluir que la norma general es que una orden de embargo de bienes autoriza al alguacil a ejecutar bienes pertenecientes únicamente a las personas contra quien va dirigido el embargo. *Fidelity & Deposit Co. of Maryland v. Mc Fadden,* 53 F.2d 1085 (1936). La regla general en los estados de la nación americana es que cuando el marshal embarga bienes pertenecientes a persona distinta de contra quien va dirigida la orden, éstos deben responderle a los verdaderos dueños de la propiedad embargada. *Chapman v. Smith, et al.,* 57 U.S. 114 (1853); *Fidelity & Deposit Co. of Maryland, supra; Barcia v. Salomón,* 90 N.Y.S. 2d 722 (1949); *Choukas v. Severyns,* 99 P. 2d 942 (1940); *Wright v. Husband,* 99 S.W 2d 583 (1936); *Atlantic Finance Corp. v. Galvam,* 39 N.E. 2d 951 (1942); *Long Island Tinsmith Supply Corp. v. John H. Ramberg & Son,* 15 N.Y.S. 2d 159 (1939); *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dept.,* 350 So. 2d 236 (1977); *Tourles v. Hall,* 168 N E. 2d 505 (1960); *Schneider v. Sachs Quality Stores, Inc.,* 197 N.Y.S. 2d 894 (1960).

De hecho existen jurisdicciones en que se distinguen los casos en que la orden no

especifica qué propiedades embargar (en que aplica la doctrina antes mencionada) y los casos en que la orden es específica en cuanto a los bienes que deben embargarse (en que se libera de responsabilidad al alguacil). Sin embargo, la protección dada a los alguaciles en el segundo caso no aplica cuando, como en el caso de autos, la orden especifica también que se ejecutará el embargo sobre bienes de un demandado y se ejecuta la orden sobre bienes en posesión de un tercero que a su vez es el dueño *bona fide* de dicho bien. *Universal Credit Co v. Gosney,* 46 N.E. 2d 305 (1941).

Aún en casos en que la ley le concede inmunidad al alguacil, se ha rechazado reconocerla cuando la propiedad embargada pertenece a una persona que no es parte en el pleito que originó el embargo. *Kemp's Wrecker Service v. Grassland Sod Co.,* 404 So. 2d 348, 351 (1981) Por otro lado, el estandar de cuidado exigido a los alguaciles en el cumplimiento de su deber es del debido cuidado y diligencia que de ordinario significa que debe actuar como una persona prudente y razonable dentro de las circunstancias. *Burritt v Plate,* 481 A 2d 425, 427 (1983); *Williams v. Brooks,* 601 S.W. 2d 592 (1980) Cuando un tercero le indica al alguacil que la propiedad embargada es de su propiedad, es su deber inquirir sobre quién es el verdadero dueño. No significa ésto que deba hacer un estudio de título, sino que como persona prudente y razonable debe ser quien en primer lugar determine, hasta que el asunto llegue a la atención del tribunal, a quién pertenece el bien. *Williams v. Brooks, supra; Burritt v. Plate, supra.* Incluso se considera razonable del alguacil algún retraso en la ejecución de la orden. *Williams v. Brooks, supra.*

## V

Con estos antecedentes analicemos las disposiciones legales y jurisprudencia interpretativa pertinente.

Como vimos anteriormente, la sección 404 de la Ley de la Judicatura, *supra,* impone la obligación al marshal de cumplir las órdenes y diligencias admitidas por autoridad competente como hombre prudente y razonable.

Por otro lado, la sección 409 establece la responsabilidad del marshal frente a un embargante que realice de modo descuidado o se niegue a realizar un embargo sobre *"cualquier propiedad perteneciente a la **persona aludida** en la orden y que está sujeta a ser embargada o vendida".* (Enfasis nuestro). O sea, es de su responsabilidad embargar bienes que **pertenecen a la persona mencionada en la orden.** El caso de autos no cumple con estos requisitos pues los bienes, como pudo comprobar el alguacil, pertenecían a persona distinta a la señalada en la orden. Así vemos que este artículo demuestra que no tiene obligación un alguacil de ejecutar un embargo contra bienes que pertenecen a persona distinta de la señalada en la orden.

*García v. Cacho & Co.,* 45 D.P R 281 (1933), trata de una acción de daños en el que el señor García demandó a la corporación demandada por embargo ilegal. Fue establecido que al momento de efectuarse el embargo le fue mostrado al marshal y a un funcionario de la demandada, un documento suscrito ante notario que demostraba que los bienes objeto del embargo le pertenecían. Al igual que en el caso que nos ocupa, García no era parte en el pleito que generó la orden de embargo. En su opinión, el Tribunal Supremo arroja luz sobre la controversia en el caso de autos al señalar: *"Este documento fue mostrado por García y examinado por el marshal y por uno de dos miembros de la firma demandada, quien no obstante, insistió en que el marshal procediera a practicar el embargo. Luego, la demandada tenía conocimiento de la venta..."* Lo anterior es demostrativo, contrario sugiere la mayoría, de que un alguacil puede ser responsable por el embargo ilegal de bienes de un tercero que no fue parte en el pleito original.

Por lo expresado, es claro lo resuelto en *Fernández v. Marshall de Distrito,* 20 D P R. 65

(1914), en el sentido de que un alguacil que actúa de acuerdo con el mandamiento no tiene responsabilidad por razón de los actos que ejecute en el cumplimiento de dicho mandamiento. Pero ello no quiere decir que un alguacil pueda ir más allá de lo ordenado y ejecutar una orden, porque es orden, de modo imprudente e irrazonable embargando bienes de terceros inocentes. La orden sólo lo autorizaba a embargar bienes del Sr. Luis Ortiz. El alguacil, desde el inicio supo que los bienes que estaba embargando pertenecían a otro. Por esa actuación negligente debe responder.

## VI

Por otra parte, es diáfano que el alguacil no actuó como un hombre prudente y razonable.

En *Méndez Vaz v. De Choudens,* 35 D.P R. 564 (1926), nuestro más Alto Foro resolvió que los documentos públicos debidamente autorizados ante notario tienen necesariamente que gozar de la presunción de validez de los negocios jurídicos en ellos contenidos. No es hasta que se demuestre clara, suficiente y satisfactoriamente lo contrario que dicha presunción queda controvertida. Como muy bien sostuvo el Tribunal, lo contrario sería equiparar los documentos públicos a los privados y los convenios verbales.

Como hemos visto, el alguacil actuante tuvo ante sí una serie de documentos, uno de ellos el contrato de compraventa suscrita ante notario, notario con quien conversó, lo que debió ser suficiente para convencerse de que el verdadero dueño de los bienes a ser embargados no era la persona contra quien tenía la orden de embargo. Si alguna duda le quedaba, como persona sensata, debió suspender el embargo hasta que el Tribunal dilucidara la titularidad del bien, conociendo, como debe conocer, la presunción de validez de que goza el documento público enseñádole. Una llamada telefónica al juez autorizante o a cualquier otro, o tal vez al alguacil jefe, hubiere bastado. Por ello, no podemos suscribir la afirmación de que el alguacil no tenía facultad para investigar, ni *"hacer determinaciones ajenas a lo ordenado",* pues ello nos llevaría indefectiblemente al mundo del alguacil que ciega, pero peligrosamente, cumple lo ordenado.

Recuérdese que la realización del embargo tomo cuatro días --de lunes a jueves-- por lo que en cualquiera de las (7 1/2 horas de los cuatro días laborables, pudo el alguacil detener su imprudente acción y visitar el Tribunal para inquirir al respecto. Se convirtió en juez y descansó en su propia determinación de que se trataba de un *"chanchullo".* Al así hacer, decidió quien era el dueño del negocio y desechó la validez del documento de compraventa y todo lo que la prudencia dictaba. Tampoco cumplió *"estrictamente con la orden recibida",* mas bien se apartó de ella y se atribuyó la facultad de determinar quien era el dueño del negocio, función que, como correctamente señala mayoría, esta vedada a los alguaciles.

La opinión de la mayoría descansa en buena parte en que durante todo el embargo (cuatro días) el apelante se limitó a llevar a la atención del alguacil *"documentos, facturas y el testimonio de varias personas",* sin hacer gestión alguna ante el Tribunal *a quo.* Sin embargo, tan temprano como en el 1926, el Tribunal Supremo resolvió que *"el dueño de la propiedad embargada como perteneciente a otra no tiene obligación o deber de oponerse al embargo o a hacer una protesta violenta contra la actuación del marshal". Méndez Vaz v. De Choudens, supra.*

Con lo anterior, no significamos que el dueño de la propiedad ilegalmente embargada no tenga obligación de mitigar sus daños. Los hechos de este caso demuestran totalmente lo contrario. Intentaron impedir el embargo con prueba fehaciente de su título sobre la propiedad. Aún más, apenas siete días ██ de comenzado el embargo solicitaron intervenir en el pleito que lo originó. Todo demuestra su diligencia para evitar los daños causados.

Por lo expresado, disentimos.

**MIGUEL GIMEMEZ MUÑOZ**
**Juez de Apelaciones**

### ESCOLIOS OPINION DISIDENTE DEL JUEZ DE
### APELACIONES SR. GIMENEZ MUÑOZ — 95 DTA 150

**1.** Comenzó el embargo un lunes 17 de junio y terminó el jueves de la misma semana.

**2.** Por razón de que el señor Lewis y esposa se acogieron a la Ley de Quiebras la reclamación se ventiló tan sólo contra el *Estado Libre Asociado de Puerto Rico. Desconocemos porqué la compañía fiadora no fue hecha parte demandada.*

**3.** Cuatro días luego de terminado el embargo, incluyendo sábado y domingo. Esto presumiblemente tuvo que obligarlos a buscar y contratar representación legal, pues el Lic. Jorge L. Marzán Figueroa, como notario autorizante de la compraventa, estaba impedido (o pudo estarlo) de representar a los apelantes.